# Birmingham Traction Co. v. Reville.

*Action against Street Railroad Company by Employe to recover Damages for Personal Injuries.*

1. *Action against street railroad for personal injuries; sufficiency of complaint.*—In an action by an employe against a street railroad company to recover damages for personal injuries caused at a switch on the defendant's road, a count of the complaint which avers that said injuries were caused by the negligence of the defendant in that a part of defendant's ways and works were defective, in that "there was no spring at said switch or other proper appliance by which the point of the switch rail was kept in its proper position, so as to allow its cars to pass without becoming derailed, the plaintiff avers that the above named defective condition arose from or had not been discovered or remedied owing to the negligence of the defendant or of some person in its employment and entrusted by it with the duty of seeing that a spring or other appliance was used in connection with said switch, so as to hold the switch point in a proper position," sufficiently states a cause of action and is not subject to demurrer.

2. *Same; sufficiency of plea.*—In an action by an employe against a street railroad company to recover damages for personal injuries alleged to have been sustained by reason of the defective condition of a switch on the defendant's road, a plea which avers that the defendant's track was constructed as required by the ordinance contract with the city under the direct supervision and subject to the approval and control of the city engineer, and that the switch where the accident occurred and the work in laying it were approved by the said engineer, and after the switch was put in it was inspected and was first class in every respect, is faulty.

[Birmingham Traction Co. v. Reville.]

3. *Action against street railroad company for injury to employe; admissibility of evidence.*—In an action against a street railroad company by an employe to recover damages for personal injuries, where it is alleged in one of the counts of the complaint that the injuries were caused by the negligence of the defendant in that a part of its ways were defective by reason of the track where the car was derailed being too narrow and of not proper gauge, and that this defective condition arose from or had not been discovered or remedied owing to the negligence of some person in the defendant's employment entrusted with seeing that its ways, works and machinery were in proper condition, it is competent under the issues presented by such count for the plaintiff to prove not only that the attention of the person entrusted by the defendant with seeing that the road was not in proper condition was called to the fact of the guage being too narrow, but it is also competent to prove what such person said in response to a statement made to him, that the track at the point in question was out of guage; such response evidencing a consciousness on his part that he understood the statement and recognized the condition of the track as pointed out.

4. *Action against street railroad company to recover for personal injuries; when negligence a question for the jury; general affirmative charge.*—In an action against a street railroad company by an employe to recover damages for personal injuries caused by the derailment of one of the defendant's cars at a switch, where it is averred in the complaint that there was no spring at the said switch or other proper appliance by which the point of the switch rail was kept in its proper position, so as to allow its cars to pass without becoming derailed, and this defective condition was caused by the negligence of some person in the defendant's employment entrusted by it with the duty of seeing that the spring or other proper appliance was used in connection with said switch so as to hold the switch in its proper position, it was shown by the evidence that there was no spring connected with said switch; that a simple piece of iron was used at said switch to keep the point of the switch rail away from the adjoining rail of the main track, so that passage along the latter would not be interfered with by the switch rail or tongue. It was also shown that the switch at the place of derailment was what is known as a "loose tongue switch," and the evidence for the defendant tended to show that such a switch, without the spring or other appliance to hold it in the desired position,

[Birmingham Traction Co. v. Reville.]

was in use with well regulated street railroads, and that the use of such a switch without a spring or other appliances does not constitute a defect in the condition of the street railroad track. There was other evidence tending to show that the piece of iron used in this particular case, was ineffective to hold the switch rail or tongue, and that it frequently got out of place, and that when out of place the switch rail or tongue would be jarred by the forward wheels of the car until the switch rail would become adjacent to the rails of the main track, and that when this happened, the front wheels of the car would go on the main track and the back wheels would go on the side, and a derailment would occur; that such derailment had frequently happened, and that the derailment occasioning the injury to the plaintiff was caused in that way. *Held*: That under such evidence it was a question for the jury to say whether or not the switch used by the defendant at the place of the injury, without a spring or other appliance to hold the switch tongue in place, was not a defect in the condition of the defendant's track at that point; and, hence, the general affirmative charge requested by the defendant was properly refused.

5. *New trial; when judgment refusing new trial will not be reversed.*—The judgment of the trial court refusing a new trial on the ground that the verdict was contrary to the evidence, will not be reversed unless, after allowing all reasonable presumption of its correctness a preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust.

6. *Damages; when not excessive.*—In an action by an employe against an employer, where the plaintiff claims fifteen thousand dollars damages for personal injuries alleged to have been caused by the negligence of the defendant, and it is shown that at the time of the injury the plaintiff was fifty-three years old, that in the injury his leg was broken and he was permanently disabled and could no longer do manual labor, at which he was engaged at the time of the accident, and that he had suffered mentally and physically, an award of eight thousand dollars as damages can not be said to be excessive.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. A. A. COLEMAN.

This action was brought by the appellee, J. H. Reville, against the appellant, Birmingham Traction

22c

[Birmingham Traction Co. v. Reville.]

Company, to recover fifteen thousand dollars ($15,000) damages for personal injuries sustained by plaintiff while in the employ of the defendant. The complaint contains six counts, but the plaintiff withdrew all of them except the 1st, 3d and 6th, and the general affirmative charge was given for the defendant as to the 3rd count; leaving only the 1st and 6th counts.

The 1st count avers the operation of a Street Railroad by the defendant and the employment of plaintiff as a conductor on one of its electric cars, and avers that said car while passing a switch on Eighth avenue was derailed and the plaintiff was injured, and then said count continues as follows: "Plaintiff avers that said injuries were caused by the negligence of the defendant in this; that a part of its ways or works used by the defendant in its business of operating said street car line were defective in this, that there was no spring at said switch, or other proper appliance by which the point of the switch rail was kept in its proper position so as to allow its cars to pass without becoming derailed. And plaintiff avers that the above named defective condition arose from or had not been discovered or remedied owing to the negligence of the defendant, or of some person in its employment, and entrusted by it with the duty of seeing that a spring or other proper appliance was used in connection with said switch so as to hold the switch point in its proper position, wherefore plaintiff sues and claims damages as aforesaid."

The 6th count adopts the preliminary averments of the 1st count and then continues as follows: "Plaintiff avers that his said injuries were proximately caused by the negligence of the defendant, in this, that a part of its ways were defective, namely its track at or near the point where said car became derailed, that the defect consisted in this, that said track was not in proper guage, and plaintiff avers that the defective condition above mentioned arose from or had not been discovered or remedied, owing to the negligence of the defendant or of some person in its employment entrusted by it with the duty of seeing that said track was in proper condition."

[Birmingham Traction Co. v. Reville.]

The defendant demurred to the 1st count upon the following ground: 1. The negligence alleged is averred in the alternative in that it is charged that the ways were defective, because there was no spring at said switch, or other proper appliance, by which the point of the switch rail was kept in its proper position so as to let cars pass without becoming derailed, and it is not shown, and the court does not take judicial knowledge that the failure to have a spring at said switch would constitute negligence and the count does not show in what other respect the switch was defective. 2. It is not alleged what would be a proper appliance to keep the switch in proper condition. 3. The count does not allege that the switch was connected with or used in the business of the defendant. This demurrer was over-ruled. The defendant pleaded the general issue and several special pleas, among which was the 7th plea, which was in words and figures as follows: "7. Comes the defendant by its attorney and for answer to the first count of the complaint, says that it is operating its street railroad under and in pursuance of a contract entered into with the mayor and aldermen of Birmingham, pursuant to a resolution adopted on the 6th day of July, 1898. That in and by said contract it is stipulated and provided as follows: 'Fifth, All construction or work done, and material and appliances used on any of said lines of said company, shall be done under the supervision and subject to the approval and control of the city engineer. and all cars, tracks, poles and equipments of said company shall be first class in every respect, and so maintained.' And defendant avers that said switch was approved by the city engineer and said work was done under the supervision and with the approval of said city engineer and defendant avers that after said switch was put in and said work done, that the same was inspected and approved by the city engineer of Birmingham and was first class in every respect and was so maintained until the alleged injury."

To the 7th plea the plaintiff demurred upon the following grounds: 1. Because said plea does not aver that the defendant's lines at the point of the switch

named in the complaint were in first class condition in every respect as required by the ordinance. 2. Because it is not averred in said 7th plea that the city engineer is infallible and that his approval made the defendants line and equipments in first class condition. 3. Because the said plea does not aver that the city engineer approved the defendants lines and equipments and that the lines and equipments were in first class condition at the time of plaintiff's injuries. This demurrer to plea number 7 was sustained.

On the trial of the case the plaintiff introduced evidence tending to show that in October, 1898, he was in the defendant's employment as a conductor, his run extending over Eighth avenue, in Birmingham, Alabama, and covering the point where plaintiff was injured; than on the 23d of October, 1898, while in the discharge of his duties as conductor, plaintiff was thrown from one of defendant's cars and permanently injured; that said car, of which plaintiff was in charge, in passing along said Eighth avenue, "split the switch"—that is in passing the switch named in the complaint, the front trucks kept the main line, and the rear trucks took the side track—which caused a sudden twist of the car, throwing plaintiff violently to the ground, he being on the rear platform in the discharge of his duties as conductor; that this switch was always kept open to the main line, and it was not necessary to stop there and throw the switch; that in splitting the switch, the rear trucks would take the wrong track, and that this might be caused by the switch tongue not being thrown properly or standing up a little; that this switch tongue was usually held in place or rather designed to be held in place by a spring or a little piece of iron which one of the witnesses found missing or out of place a time or two; that in passing over this switch the cars generally went over with a kind of jolt; that there was no spring attached to this switch, although there was a place for one; that a little piece of iron used to hold the switch in place was a piece of fish-plate, about as wide as two fingers, and on one occasion when there

was a derailment at that point, one of the witnesses found that the switch tongue was up on top of the piece of iron; that there was no appliance to keep the switch in place; that a fish-plate was used to keep the switch in place but it would sometimes work loose; that several cars split the switch and became derailed before plaintiff was injured, which was brought to the notice of defendant's track foreman.

The plaintiff introduced other evidence tending to show that the track was out of guage; being too narrow by $\frac{1}{2}$ or $\frac{3}{4}$ of an inch at the point where plaintiff was hurt; that this was known to defendant's servants charged with keeping the track in proper condition or had been so known for a long time; that in passing over said place the front wheels would mount the point of the switch, sometimes; and that after plaintiff got hurt a guard rail was put down at the switch point.

Plaintiff introduced evidence as to his injuries, showing that he was permanently disabled and could no longer do manual labor and that he was then fifty-three years old and was making $1.50 per day at the time he was hurt; that he had suffered mentally and physically; that he expended $50.00 in and about his cure and had been unable to secure employment since his injuries.

Defendant introduced testimony tending to show that the track was in proper guage at the point where plaintiff was injured and that a spring could not be used at that point; that cars passed there many times a day without being derailed; that the loose-tongue switch, such as the one in question, was in general use by well-regulated railroads; that a spring is not used much in cities and not when the cars pass through it both ways; that the switch had been fixed three or four months before plaintiff got hurt and that at the time plaintiff was hurt it was in proper guage; and the defendant introduced rules of the company regulating the speed of cars and requiring caution in passing over curves, switches, etc.

During the examination of J. R. Murphy as a witness for the plaintiff he testified that he was working for the defendant during the summer of 1898 under Baker.

[Birmingham Traction Co. v. Reville.]

who was head foreman of the track hands; that he was present when the switch at which the plaintiff was hurt was put in; that while the switch was being put in he tried the guage two or three times and it was not in guage; that the switch was too close and lacked about three-quarters of an inch of being in guage. Witness was then asked the following question: "Was Baker's attention called to that?" To this question defendant objected upon the ground that it called for incompetent, immaterial and irrelevant evidence. The objection was overruled and the defendant duly excepted. The witness answered that he told Baker at the time he and the other hands were spiking the rail down. Witness was then asked what was said between him and Baker. The defendant objected to this question upon the ground that it called for immaterial, incompetent and irrelevant evidence, and duly excepted to the court's overruling the objection. The witness answered: "I just remarked to him that he was spiking the rails up too close and he said he wanted them close; and I remarked to him that some motorman would come along here and ditch a car and kill somebody, or something of that kind, some remark, and he said I don't give a damn; and I will be in Chicago or somewhere else at that time." The court overruled the motion of the defendant to exclude the answer of the witness, and to this ruling the defendant duly excepted.

Upon the introduction of all the evidence the defendant requested the court to give the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If the jury believe the evidence they cannot find for the plaintiff on the first count of the complaint." (3.) "If the jury believe the evidence they cannot find for the plaintiff on the 6th count of the complaint."

There were verdict and judgment for the plaintiff assessing his damages at $8,000.00, and defendant made a motion for a new trial upon the grounds that the verdict was contrary to the law and to the evidence, and that the verdict was excessive. This motion was overruled and the defendant duly excepted.

Defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

LONDON & LONDON, for appellant.—The first count of the complaint did not state a cause of action. The allegation is merely that the ways were defective in that there was no spring or other proper appliance at switch. And as it cannot be said as matter of law that it is the duty of persons operating a street railroad to have a spring or other appliance at a switch to hold the point of the switch in place, the count does not state a cause of action.—*Whatley Admr. v. Zenida Co.*, 122 Ala. 118.

The employer's duty to his employe is fully discharged when he furnishes the employe with appliances which are reasonably safe and suitable; such as are in general use by well regulated and prudently conducted concerns of like character under similar circumstances.—*L. & N. R. R. v. Allen*, 78 Ala. 495; *G. P. R. R. v. Probst*, 83 Ala. 518; *Wilson v. L. & N. R. R. Co.*, 85 Ala. 272; *L. & N. R. R. v. Hall*, 87 Ala. 708; *A. G. S. R. R. v. Moody*, 92 Ala. 279; *Titus v. Bradford, etc. Co.*, 136 Pa. 346; *Kehler v. Schmenk*, 144 Pa. 348; *Hogan v. Chicago, etc., R. R.*, 86 Mich. 615; *Shadford v. Ann Arbor Co.*, 111 Mich. 493; 14 Am. & Eng. Ency. Law (1st ed.), 892; Shearm. & Redf. Negligence, § 195.

The burden is upon the complaining employe to prove that the instrumentalities furnished or supplied were defective in the particular alleged and that the defect alleged was the proximate cause of the injury.—*Western Ry. v. Mutch*, 97 Ala. 194; 24 Am. & Eng. Ency. Law (1st ed.), 904; Whittaker's Smith on Negligence, 24; Shearman & Redfield on Negligence, § 222; Bradner on Evidence, 218, 219; *Chicago, etc. R. R. v. Elliott*, 55 Fed. Rep. 949; *Railway Co. v. Kellogg*, 94 U. S. 469; *Hoog v. R. R. Co.*, 85 Pa. St. 293; *The Nitro-Glycerine Case*, 15 Wall. 524, 557; *Railroad Co. v. Byrne*, 100 Fed. Rep. 359.

Between employer and employe the mere happening of an accident is not of itself even *prima facie* proof of

negligence.—14 Am. & Eng. Ency. Law (1st ed.), 879; Buswell Personal Injuries, § 111; Bradner on Evidence, 218, 219; Wood Master & Servant, § 419; *Bivins v. G. P. Ry.,* 96 Ala. 325; *Mary Lee Co. v. Chambliss,* 97 Ala. 171.

LANE & WHITE, *contra.*—The first count of the complaint stated a cause of action and the court did not err in overruling the demurrer thereto. The failure to provide means to hold the switch in place was the negligence complained of, and it was necessary to negative not only the presence of a spring, but of every other proper device to hold the switch point in place.—*M. & C. R. R. Co. v. Martin,* 117 Ala. 367; *Highland Ave. & B. R. R. Co. v. Swope,* 115 Ala. 287; *Highland Ave. & B. R. R. Co. v. Miller,* 24 So. Rep. 955.

The demurrers to the seventh plea were properly sustained. Said plea purports to answer the first count of the complaint. Said plea does not deny the allegation of the complaint that the switch was not provided with a spring or other proper appliance to hold it in place. If said plea is a denial of this allegation and nothing more, then the defendant had the full advantage of it under its first, second and third pleas (the general issue.)—*Tutwiler v. McCarty,* 121 Ala. 360.

Charge No. 1 was properly refused. If there was *any* evidence to support the averments of the first count of the complaint, the charge was properly refused.—*Birmingham Ry. & Electric Co. v. Pinckard,* 124 Ala. 372.

A verdict will not be set aside as excessive where the damages are, in whole or in part, for physical suffering and mental anguish, unless it appears that the jury have acted from passion, prejudice or other improper motive. *Western U. T. Co. v. Brooshe,* 13 Ala. 846; *Virginia Midland Ry. Co. v. White,* 10 Am. State Rep. 681, and cases cited, and note.

McCLELLAN, C. J.—We read the first count of the complaint to charge that the want of a spring at the switch or other appliance to hold the switch rail in posi-

tion for the safe passage of cars *was* a defect in the ways or works of the defendant. It is further explicitly averred that this defect arose from or had not been remedied, owing to the negligence of the defendant, or some person in its employment "entrusted with the duty of seeing that a spring or other proper appliance was used in connection with said switch so as to hold the switch point in its proper position." And to the defect thus averred the injury to plaintiff is ascribed. On the case thus presented it is not for the court to determine as matter of law whether the want of such spring or appliance constituted a defect in the track or switch, but that was an issue of fact for the jury. The court properly overruled the demurrer to this count.

The demurrer to the seventh plea was properly sustained, or, at least, if there was technical error in that ruling it did not prejudice the defendant. Of course, if the switch was defectively constructed, the fact that the city engineer thought otherwise and approved it as being properly constructed would be no defense in this case. If the plea is to be taken as averring, in addition to the approval of the engineer, that the switch was a proper one and properly laid, this was matter covered by and redundant upon the general issue, and defendant had the full benefit of it under the plea of not guilty.

It was pertinent to the issues presented by the sixth count to show that the person to whom defendant had entrusted the duty of seeing that its ways were in proper condition knew that the track at the point of the derailment was out of gauge. In proving this it was competent to prove not only that the attention of such person was called to the fact, but also what he said in response to the statement made to him that the track was out of gauge, in so far, certainly, as that response evinced a consciousness on his part that he understood the statement and recognized the existence of the fact stated. Hence it is that at least a part of what Baker said to Murphy when the latter called the former's attention to the defect in the gauging of the track—that part which tended to show that Baker was then conscious that he was having the gauge made too close—was properly re-

ceived in evidence. The court did not err, therefore, in overruling the motion to exclude what Baker said on that occasion though it be conceded that what else he said, considered by itself, was impertinent.

It may be that the use of a "loose tongue" switch on electric street railways without a spring or other appliance to hold it in a desired position is common and usual with well regulated roads of that class, and that ordinarily the use of such a switch without such a spring or other appliance in the track of such roads does not constitute a defect in the condition of such track; but when a loose tongue switch is so put into a track or is put in at such place and for such use that it is likely to cause derailment of cars attempting to pass unless it is provided with a spring or other proper appliance to hold the tongue out of the way of wheels not intended to take the switch, and no spring is attached and no appliance is provided, or, if an appliance is provided, it is not adapted to and does not accomplish the purpose for which it is provided, the presence, structure and use of such a switch without a spring or other proper appliance does constitute a defect in the ways of the company. The switch here, it appears, was not one leading from one line onto another, or from a main line onto a branch road, but one going onto a mere siding. The degree to which or the frequency with which this siding was used does not appear; but it is clearly inferable from the evidence that cars were usually run by this place without going onto the siding at all, that the switch was supposed to be in a position to admit of this without manipulation by motormen as they approached it, and that a small piece of iron was provided there to be used in keeping the point of the switch rail so far away from the adjacent rail of the main track as that passage along the latter would not be interfered with by the switch rail or tongue. There was also evidence tending to show that this piece of iron was ineffective to so hold the switch tongue, that it frequently got out of place, and that when out of place, the tongue was liable to and frequently did get over against the main rail so that wheels of a pass-

ing car would sheer off the main rail onto it when it was
not intended or expected that they should or would. In-
deed, the evidence tends to show that when the small
piece of iron was out of place, the switch tongue would
be jarred by the forward trucks or wheels of a car in
passing on the main line over against the main line rail
so as to catch the wheels of the after truck, force them
onto the switch rail while the forward trucks continued
on the main rail, thus causing the car to "split the
switch," as the witnesses express it, and necessarily pro-
duce derailment. This happened in a number of in-
stances both before and after the occasion of plaintiff's
injury, and this precise thing happened on the occasion
of his injury, and caused that injury. On these tenden-
cies of the evidence it was for the jury to say whether
that switch was incorporated in defendant's ways at that
place for the uses to which it was there put without a
spring or other appliance, or without proper and effect-
ive appliance to hold its tongue rail out of the way of
the wheels of cars not intended to take it, was or was not
a defect in the condition of defendant's track at that
point; and, if they so found, it was for them to say fur-
ther whether this defect was the proximate cause of
plaintiff's injuries. Hence our conclusion that the gen-
eral charge requested by defendant on the first count of
the complaint was correctly refused.

There was also evidence in support of the sixth count
of the complaint, evidence going to show that defend-
ant's track at the point of the derailment of the car and
the injury to plaintiff was out of gauge and that this de-
fect was the proximate cause of the injury. Upon these
issues, too, the court properly declined to give the affirma-
tive charge requested by the defendant.

We do not find that the circuit court erred in overrul-
ing defendant's motion for a new trial. The verdict was
sufficiently supported by the evidence to justify the con-
clusion of the court against setting it aside on the insist-
ence of the defendant that the finding was contrary to
the evidence, etc.; and, in view of the averments and evi-
dence of plaintiff's pain and suffering, the permanency
to a degree of his injuries, etc., we cannot see our way

to affirming that the circuit court erred in refusing to set the verdict aside on the ground of its alleged excessiveness.

Affirmed.